Schneider v. Beam Technologies, No. 241136. And counsel, you may proceed. Good morning. May it please the Court. In the context of a trade secrets misappropriation case, ownership means rightful possession. This is why nearly every court that has interpreted the Defend Trade Secrets Act and the Colorado Uniform Trade Secrets Act has identified possession, not ownership, as the first element of a claim. Critically, in the summary judgment order, the district court held as follows. Quote, there is a genuine dispute of material fact as to whether Mr. Schneider's possession of spreadsheet No. 4 arose from improper conduct, and the court cannot resolve factual matters at the summary judgment stage. This is in Appendix 5 at page 1338 to 1339. The court made this factual determination in the context of defendants MSJ under the unclean hands doctrine. Counsel, do you agree that ownership is an element of the claim? So, yes. In the context of a trade secret claim, the first possession is, or sorry, the first element is possession. And I think that's because ownership is an overarching theme that sometimes gets misconstrued and has been misconstrued by the defendant in interpreting the statute. First, there's the idea of ownership as it applies to who may bring a trade secret claim. Then there's the idea of ownership in the context of what constitutes a trade secret, i.e., is this something that is a trade secret? In the context of who may bring a misappropriation claim, the Defendant Trade Secrets Act is clear. It defines the term owner under 18, sorry, 18 U.S.C. 1839-4. The term owner is the person or entity in whom rightful, legal, or equitable title or licensing the trade secret is reposed. Similarly, in the Colorado Trade Secrets Act, the statute defines a claimant. It does not say that only an owner can bring a claim. It says a claimant can bring a claim. And in Gates-Rubber, the 10th Circuit already held that the first element of a trade secret claim under the Colorado Trade Secrets Act is possession. Now, a quick question. Counsel, can I just ask on the federal statute, which uses the word legal and equitable title, what does that mean in this context? Yeah, so it is our position that legal and equitable title means rightful possession. And in the context of this case, I think. Means lawful possession. It means lawful possession. Okay. Well, the statute doesn't say that, does it? So the statute says, I mean, it says person and entity in which rightful, legal, or equitable title. That is a little bit ambiguous in the context of determining what is equitable title. But when you look at trade secrets cases, if you look at DTM research, advanced food systems, the idea behind the value of a trade secret is not that there's one person who has the entire bundle of rights. Only the owner owns a trade secret. Trade secrets can be transferred. They can be sold. They can be gifted. They can be consented to. They can be collaborated among. And there can be a lot of different individuals who can have a possessory right in a trade secret. So I just want to make sure I'm following. Legal and equitable title is the phrase used in the statute. And you're arguing that that's the same thing as lawful possession. And you're basing that on courts that have interpreted legal and equitable title to be lawful possession. Is that right? That is our position. And the Penn Circuit has signaled agreement with the overarching principle that you just exposed. And they expressed that agreement in ICE court. And in ICE court, the Penn Circuit specifically identified how you can address legal and equitable title possession as it relates to the first element of a trade secret claim and an employer-employee relationship. And the court specifically noted that there are two ways that a district court can analyze this. First is under the party's contracts. If an employer hires an employee to come work for the company, they can certainly enter into a contract which dictates ownership over certain trade secrets, if there are trade secrets. And those contracts would govern the issue of ownership, legal and equitable title, or possession. The second issue is the hire-to-invent doctrine. And defendants misconstrue the hire-to-invent doctrine in their brief. But the idea behind the hire-to-invent doctrine is not that somebody has to participate in the creation of the trade secret. In fact, it's sort of the opposite. The idea is that if an employer hires someone specifically to create a trade secret, the employer owns the fruits of that labor because that is the purpose behind what their employment was designed to do. And the employer, therefore, owns that trade secret. Now, in this context, Mr. Snyder was not hired to create the spreadsheet. There is no evidence to the contrary. There is also no evidence that Mr. Snyder agreed to any sort of contract indicating that he did not have an ownership right in the spreadsheet. And in that circumstance, at least under Ice Corp., which district courts should follow, Mr. Snyder had rightful possession. Well, counsel, Mr. Snyder would have the burden on that issue, wouldn't he, on what he was hired to do or what he wasn't hired to do? Who has the burden to advance facts on that question? Correct. He would have the burden. He would have the burden. Did he do that in district court? And I'm not quite sure you mean, did he establish operating in the district court level? Well, I'm asking whether, as I understand your argument, when he was working for Guardian, he was hired to do certain things, but he wasn't hired to create the spreadsheet. Yeah, that's correct. And did he make that showing in the district court? Yes, he does, Your Honor. The evidence that was presented at the district court level was that Mr. Snyder was hired to sell Guardian's product. He was not hired specifically to create or cultivate a trade secret or create or cultivate a client list. And that evidence was not really disputed at the district court level. Counsel, can I ask you about another provision in the definitional section of the statute, and that is of trade secret itself. In other words, is there a dispute here whether or not this data was a trade secret? Because in 3A, it requires the owner of the trade secret to, quote, take in reasonable measures to keep such information secret. The Colorado statute has similar language, not identical. Did Mr. Snyder here take reasonable measures to keep information secret? I mean, he emailed it to BEAM. He made no efforts to call it back. He did nothing to protect it at all. So why is this data even a trade secret? So he did take reasonable measures, and this was something that the district court agreed with us on at the district court level, or at least it did not agree with defendants that reasonable measures were not taken. Our client protected the trade secret from any disinformation before his employment at BEAM. Then once he was employed at BEAM, he specifically only provided individual portions of the trade secret that he intended to share. Once he realized that he had accidentally provided the entire portion, it was too late. The trade secrets are already being uprooted to BEAM, or BEAM CRM, and there was nothing he could do at that point. But I think bringing up that section of the statute is critically important because that's where defendants misconstrue the term ownership. If you think about what a trade secret is in this case, Mr. Snyder obtained lawful possession when he took that with him. But the statute says that the owner of the trade secret must take reasonable measures to protect its secrecy. So ownership in this context really has to do with is the spreadsheet secret. So when Mr. Snyder took the spreadsheet and he had it and he lawfully possessed it, if someone stole it from him, he has a misappropriation claim for that person who stole it from him. So long as the owner, the original owner, Guardian, keeps it secret. If Guardian were to disinmit and say, I'm going to give this spreadsheet and put it on the internet, Mr. Snyder would no longer have a trade secrets claim because it wouldn't be defined as a trade secret. It's not who can bring the claim, it is what is a trade secret. Or if Guardian were to say, you know what, we're going to get rid of our contract that says all of our client contacts are ours and only ours, and we're going to let every single one of our employees have access to it, then Mr. Snyder would no longer own a trade secret. But that's not what happened here. And that's where defendants are conflating the issue. And that's where the district court is conflating the issue because it's conflating the idea of the owner taking reasonable measures and bringing that over into the possession element. And really, in order to bring a trade secret claim, all you need to show is lawful possession. Consider this scenario. It is undisputed, or defendants cannot reasonably argue, that a trade secret cannot be gifted. So if my daughter were to become an attorney, and I gave her all of the trade secrets that I have used in the practice of law and said, you know what, these are yours. Good luck with your own practice. Go ahead and use them. She would have a valid possessory right in those trade secrets. Can I ask you, though, another question about the record? Yeah. As I read Mr. Snyder's position, it was that at some point, BEAM offered to pay him, quote, off the books and give him some type of employment title in exchange for the spreadsheets. Is there any evidence in the record that supports that this offer was made beyond Snyder's testimony saying that's what happened? No, Your Honor. That was a conversation between BEAM's CEO and Mr. Snyder that came out in the deposition testimony. But Mr. Snyder was offered to, he was offered $60,000 off the books if he were to provide the spreadsheets to BEAM. The only way that came out was in the form of testimony. Okay. So doesn't that also maybe undercut his argument to whether or not he lawfully possessed the data in the spreadsheet? Because, you know, the inference is if it's going to be off the books transaction, there's a recognition between BEAM and Snyder that he was going to give them something that he shouldn't be giving them because he shouldn't have it. Well, respectfully, Your Honor, that would be a factual dispute. And that's not appropriate for adjudication, summary judgment stage. I disagree with you. I think you could certainly make that argument, but that's going to be for the trier of fact to determine. And really, I mean, this is a summary judgment motion. And at this stage, construing the facts in favor of my client, which the court must do, the evidence indicates that Guardian gave him the spreadsheets. If you construe the facts in the right most favorably to my client, they gave it to him. He had been an employee at Guardian for 10 years. He did not have to sign any sort of agreement. They consented to his projection, and he had a right to do what he wanted with the spreadsheet. So under that standard, and especially in light of the court's holding that there is a genuine dispute of material facts with respect to whether or not Mr. Snyder rightfully obtained them, summary judgment cannot be reconciled with that finding. Roberts. Counsel, you have a Federal claim under the Defend Trade Secrets Act, and you have a state claim under the Colorado trade secret statute. Do both statutes treat ownership in the same way? Yes, Your Honor. It is our position that they do. Ownership is treated, so under the Colorado statute, a claimant may bring a claim for damages, not an owner. A claimant may bring a claim for damages. That is more broad than owner, and the fact that the drafters used owner later on in the statute to define a trade secret but used claimant to say who can pursue damages is instructive. Well, one reason I'm asking this is that it seems that under the Colorado trade secrets, ownership would be a matter of state law, wouldn't it? And under the federal statute, I'm not sure whether it's federal or state law, and that's why I'm wondering if there's some daylight between the two. Yeah. So, I mean, I think normally I would agree, but the problem is, and not really the problem, but the intent behind the Colorado Uniform Trade Secrets Act was, and this is CRR 774-109, this article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among the states enacting it. So, the drafters of the Colorado Uniform Trade Secrets Act were specifically trying to comport with the Uniform Trade Secrets Act. I've got about 10 seconds. I want to address the second issue, which is the 702 order. This is very quick, very brief. The district court did not allow my client to present evidence of a factual application of why loss earnings are appropriate in this case. Instead, the defendant simply argued that loss earnings were not available under the legal claim. That argument was incorrect, which the district court noted, and my client was never given the opportunity to present evidence supporting his loss earning damages. So, the court should also overrule the 702 motion under sports racing and follow the framework that was laid out by the district court in Sheppard. This is your expert testimony? Yes, correct. Okay. Thank you, counsel. Good afternoon. Please, the court. My name is Donald Lake, and I stand here today representing Beam Technologies, the Apo Lee. There are two issues that were decided by the district court that are at issue here today. First is a partial summary judgment order, wherein the court found that there was no genuine issue of material fact that Mr. Snyder did not own a database known as the Guardian Siebel Customer Database, and referred to colloquially throughout the case as spreadsheet number four, which is a subset of the complete database. The complete database, which was undisputedly created at Guardian, by Guardian, by people other than Mr. Snyder. Mr. Snyder contributed a de minimis amount to the entire database of 60,000 brokers. He actually could not identify at summary judgment briefing or at oral argument exactly how many individuals he might have added to, but he thought it might be less than 10 at oral argument, to a total of 60,000 of brokers in that database. The court decided on this factual record and a few other facts, which I can get into in a moment, that essentially there was no issue, material issue, of disputed fact that Mr. Snyder did not own the Guardian Siebel Database. Do you agree that it turns under section 1839, at least on the federal claim, on whether the plaintiff was in lawful possession of spreadsheet number four? Absolutely not, Your Honor, and there are two issues here. First, well, I believe that lawful possession is a part of it, but ownership is what was argued at the district court level. To reiterate, but doesn't, isn't that the definition of ownership under 1839-4? Well, someone with legal or equitable title, title, title, but title and possession are not the same. Even equitable title? Even equitable title. If I give my pin to Mr. Snyder's counsel and say, please hold this, or if Mr. Snyder takes my pen off the table and says, may I use this? I say, sure. He doesn't own that. He doesn't have equitable title to that. He is in possession of it. It's lawful because I let him borrow it, but it doesn't mean that he has lawful possession of it, and this actually- Did the district court specify what it considered ownership to mean, and if it did, what did it say? The district court didn't define ownership. What the district court did is it considered the party's very specific arguments, factual arguments, about whether ownership existed, and the question of possession, the reason why I say it's not at issue here is because it wasn't argued before the district court. At no time did Mr. Snyder argue that because he lawfully possessed these spreadsheets, therefore, he had ownership at the district court level. That's not in the record. What is in the record is that there is a very short deposition excerpt where Mr. Snyder says that Guardian knew he emailed, he couldn't explain how they knew he emailed himself these spreadsheets, and he couldn't tell anyone who he told emailed these spreadsheets. What does that matter on summary judgment? If he says that on page 137, did you have permission from Guardian to forward the spreadsheet to your Hotmail account? Answer, yes. Who gave you the permission? I don't remember. So are you saying that we should assess the credibility of his deposition testimony because he didn't know these details? No, and actually the court specifically addresses that, and the court says that she does not address the credibility of Mr. Snyder's testimony at that deposition, but rather weighed it in contrast to the overwhelming testimony that Mr. Snyder, at his own insistence, did not create this Guardian spreadsheet. Yeah, so let's say he didn't create, let's say Guardian said, okay, well, Mr. Snyder, you're going to be a salesperson. We have this wonderful database of all of these brokers. We call it spreadsheet number four. Here it is. You can have it, and they say, and he says, well, you know, it's COVID. I like to work from home, and so I want to email it to my Hotmail account. Can I do that? Yes, you can. So you're saying that even if we are to assess the claim for misappropriation of trade secret under lawful possession, that he didn't, even though he lawfully possessed it, even though they permitted him to do it, he didn't create it. They just let him have it. I'm just not sure that I understand why, whether or not he created the entries matters on lawful possession. So I raise the creation issue because of the conversation from ICE Corp about hire to invent and creation as an indicator of lawful possession, but getting back to Your Honor's question, Judge Bacharach, the fact that Mr. Snyder testifies that he was permitted to email himself this Hotmail database in February of 2016 does not mean that he was in continued lawful possession of that database after his employment with Guardian was terminated in August of 2016. And I saw an excerpt of one sentence on page 12 of your summary judgment brief where you said that. Yes. I never saw the preceding sentence relating to that, the subsequent sentence. And I thought that's what you were going to argue on your summary judgment motion. But other than that one sentence, I never saw where you argued that his right to lawful possession expired once he was terminated from Guardian. Now, you did argue that about this letter that Guardian had, and you walked that back. Do you regret it? That you don't have any evidence that he signed it, and that was clearly hearsay. So where, other than the one sentence, did you ever argue on summary judgment that his right to lawful possession expired upon his termination from Guardian? Well, Your Honor, I would refer actually back to Judge Mathison's comment earlier, that it's Mr. Snyder who has the burden to prove. Oh, really? So under Solotex, you have an obligation as a claimant to identify, let's say to create a genuine issue of material facts on elements A, B, C, and D, even if the defendant only argues A, B, and C, why as a plaintiff would you present evidence to the district court on element D if the defendant hasn't challenged that element? Because there's only a single element here, and the element is ownership, and that's what was argued, and that's what was discussed. But you argued it based on misappropriation of freight secret, which is the email to his Hotmail account, and that's what he responded to, and he pointed to the evidence on 137. If you didn't argue that that right to lawful possession expired upon his termination from Guardian, I don't know why he would have ever thought to present evidence that, well, that right continued. The district court certainly didn't seem to understand your argument that way, and nor did I. And then we get back, excuse me, this brings us back to the question of ownership versus lawful possession and what was actually argued at the district court level, and that's why I was going back to Judge Mathison's point earlier, which is that Mr. Schneider's misappropriation chain claims under both the DTSA and the Colorado UTSA were challenged based on a lack of ownership. The definition of a trade secret in both requires ownership. The ownership was not defined by the district court, but the district court did evaluate both statutes and found that ownership didn't reference lawful possession, that is what's created. Okay, why was that? That's because both parties in their briefing in document 97 for Beam and document 105, and I'm sorry I don't have the appendix references handy, but the motion and the response that ownership is what's the sine qua non of a trade secret. And so without possession being raised by anyone, the question of possession was construed by the ownership. That makes sense. So if we, let's say hypothetically, if we reject that, if we say, no, ownership under the Defend Trade Secret Act in the CTSA is the equivalent of a right to lawful possession, do you lose the misappropriation claims? No, Your Honor, because the misappropriation claims, as they were argued, right, we claimed that without ownership, as it was being defined and used by the parties, then he couldn't succeed on the claims. Excuse me, my brain glitched for a second. But then what we did was we said that he's adduced no evidence with respect to ownership. Ownership may be defined in particular ways by the statute, but the phrase in the statutes is owner. And so we argued he is not an owner of these trade secrets, trade secrets or not. So let's actually play out one of these hypotheticals. So if Mr. Snyder owns, sorry, possesses, right, during his employment and has access to Guardian's broker list, he then goes to Beam Technologies and he emails the entire thing, lock, stock and barrel, over to Beam. He meant to only email pieces of it, okay, but under no circumstances did he email anything with a confidentiality designation and on argument, counsel, and suggests that once the cat was out of the bag, the bell was rung, he couldn't do anything about it. He didn't try to claw it back. He did nothing. So here's the question. If the statutes, both of them, require that an owner maintain confidentiality in order for a broker to maintain confidentiality, does confidentiality mean that Guardian no longer has a trade secret that it can assert against any other third party? The result in allowing a possessor to do whatever they want with a trade secret would defeat the owner's capacity to protect their own trade secret, and then we're left with a situation where really it's a Mobius strip. We're trying to sort out. Counsel, can I just jump in and is this, are we at reasonable measures at this point? Your Honor, the court didn't reach reasonable measures because the court found that there was no ownership, and so I'm just, I'm stringing out a hypothetical to rebut the proposition that Beam should have brought anything other than ownership to the court's attention. Well, you've referenced a few times now what was argued in district court. Are you, you haven't used the word, but are you saying that Mr. Snyder has waived his lawful possession and ownership arguments that are being presented now? I'm saying, Your Honor, yes, and lawful possession in this circumstance, A, was not established and B, was not addressed. Do you, did the district court ever address the lawful possession issue? No, Your Honor. Counsel, can I turn to the expert issue? Yes. And noting that, as I understand the record, you brought a motion to exclude Mr. Adame's testimony and now Mr. Snyder is arguing that the district court, in resolving that motion, went beyond and essentially made a ruling that is much broader than just sort of the typical gatekeeper function that the district court should engage in regarding an expert. Excuse me. Why, why wasn't that error? Because the district, excuse me, because the district court didn't go broader than the Rule 702. Why not? Rule 702 analysis, so there are two issues here. One was Mr. Snyder provided with notice as to what the district court would be considering, and he was. And two, whether or not the district court undertook a factual analysis to determine whether or not a trier of fact, right, under Rule 56 could conclude that Mr. Adame was, sorry, that Mr. Snyder was entitled to Mr. Adame's damages. But that's not what happened. What happened is this. Mr. Adame proposed to testify that Mr. Snyder was entitled to $1.223 million in compensation for lost wages in his initial report, changed it to lost earnings. That doesn't matter. They're the same for the purpose of the analysis. And so with related to the three misappropriation claims, misappropriation that was promissory estoppel, there was the obtaining workman by misrepresentation, there was the fraudulent misrepresentation. What the court did in terms of an analysis is actually very similar to what was done in Auraria, which I realize is a case that Appellant takes issue with, but the court examined the allegations of the complaint. The allegations of the complaint said that due to a misrepresentation, I was not hired, right, or I was hired, excuse me, but the representations turned out to be false. I was later fired, even though I brought these trade secrets to being. But there are two things at issue, and I'm short on time. May I finish answering the court's question? Please complete your thought. Thank you. I'm trying to be concise. What the court found was that although in some circumstances, a misrepresentation claim with regard to employment can give rise to a lost earnings claim. Those circumstances, for example, a promise of a term of employment, were not present here. That was the extent of the court's findings with regard to the fact. What the court did is it determined that as a matter of law, lost earnings or lost wages are not available under the claims brought by Mr. Snyder, and as such, it would be misleading, confusing, etc. to the jury to hear testimony about that. Now, there's more, but I'll stop because I'm out of time. Can I ask one more? A quick one. I may have missed this in the record, but Snyder was fired by being fairly shortly after he sent the spreadsheet. I believe that was in September. He gets fired in November. Is his termination in any way relevant to any of the claims before us? Because it just kind of happens in the record, but it's not explained. I don't have the appendix, so I'd be happy to file a supplemental brief with those, but the short answer is no. It was not related to the spreadsheets. Okay. Thank you, counsel. Thank you. The time has expired. The case will be submitted and counsel are excused.